# 22-0132-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MARCEL WORTHY, AKA Cheese, RODERICK ARRINGTON,
AKA Ra-Ra, LETORRANCE TRAVIS, AKA Torrance,
JULIO CONTRERAS, AKA Blue Demon,

*Defendants,*

AARON HICKS, AKA Boog, AKA Boogy,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

JAMESA J. DRAKE
DRAKE LAW LLC
*Attorneys for Defendant-Appellant*
P.O. Box 56
Auburn, Maine 04212
(207) 330-5105

# Table of Contents

Argument ................................................................................................ 1

   I.   The district court held Hicks's vaccine declination against him.... 1

  II.  The government misapprends Hicks's medical condition. ............. 4

  III. Courts should not rely on acquitted conduct as a basis for denying

     compassionate release. ......................................................... 7

Conclusion ............................................................................................. 8

# Table of Authorities

## Cases

*United States v. Greenlaw*, No. 18 CR. 98, 2021 WL 1277958 (D. Me.

    April 6, 2021) ....................................................................... 1

*United States v. Robinson*, 2021 WL 1565663 (S.D.N.Y. Apr. 21, 2021). 1

## Argument

## I. The district court held Hicks's vaccine declination against him.

In the district court, the government urged that Hicks's request for compassionate release should be denied because, *inter alia*, he refused to receive the COVID-19 vaccine. *See* A-152 ("More importantly, though, the defendant has refused the opportunity to be vaccinated against the virus."); A-158 ("The defendant's concern about BOP's ability to protect against COVID-19 variants is undercut by his refusal to take the vaccine when offered."). The government even said that "in this district and elsewhere" courts have "nearly uniformly denied compassionate release" when the defendant "refused the COVID 19 vaccine:"

> "[C]ourts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons [when]…[the defendant] refused the COVID-19 vaccine." *United States v. Robinson*, 2021 WL 1565663, at \*3 (S.D.N.Y. Apr. 21, 2021). "To reward [the defendant] for his vaccination refusal would put the lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions." *United States v. Greenlaw*, No. 18 CR. 98, 2021 WL 1277958 at \*7 (D. Me. April 6, 2021).

A-161.

Perhaps not surprisingly, the district court incorporated the government's argument in its reasoning. Hicks's vaccine declination, which the court specifically noted, was considered by the district court and deemed a reason that cut against compassionate release:

> [Hicks] refused the Pfizer-BioNTech vaccine on February 9, 2021, the Janssen vaccine on April 29, 2021, and the Moderna vaccine on April 30, 2021.
>
> * * * * *
>
> In the Court's discretion, it concludes that Defendant has not presented "extraordinary and compelling reasons" for compassionate release based on any medical condition in the context of the COVID-19 pandemic. In addition, it is of course within an inmates right to refuse any medical treatment, including vaccination. But courts may consider a defendant's declination of a COVID-19 vaccine as part of their "extraordinary and compelling" reasons analysis where a defendant argues his or her health is compromised while incarcerated during the pandemic.

A-50.

Now, on appeal, the government attempts to side-step the issue of vaccine declination altogether – and, respectfully, it does that by

misconstruing the district court's order. The government writes that Hicks's vaccine status played no role in the court's decision: "The district court did not rely on Hicks's vaccination status when it made its decision; in fact, it made no judgment at all as to Hick's refusal." (Red Br. 12).

Then, the government backpedals and says that the district court "simply noted that vaccination status was one factor it could consider…." (Red Br. 12). Later in its brief, the government withdraws further and says, "the district court did not base its decision *solely* on Hicks's refusal to be vaccinated," (Red Br. 13; emphasis added), and then finally, the government altogether recants and argues that Hicks's vaccination status was probative of his "true concern about COVID-19…." (Red Br. 13).

Respectfully, the only plausible reading of the district court's order is that Hicks's vaccine refusal was counted against him in the "extraordinary and compelling" calculus. The government told the district court that, as a matter of law, Hicks's vaccine status was relevant to whether "extraordinary and compelling" reasons existed. The district court agreed with the government's legal premise, and it considered Hicks's vaccine declinations when denying compassionate release. The

argument that Hicks presses in his opening brief (and renews here) that vaccine status should not be relevant[1] or in the alternative, to the extent that it is, a court must also consider whether the defendant's vaccine refusal is justified, (Blue Br. 18-32), is squarely presented by this appeal. And for all the reasons set out in the Blue Brief, guidance from this Court on the topic is needed to resolve disparate treatment of the issue among the district courts within this Circuit.

## II. The government misapprends Hicks's medical condition.

Respectfully, here again the government's argument is internally inconsistent. The government vacillates between arguing that Hicks is "a young man in his thirties with no underlying health conditions," (Red Br. 12), and acknowledging that Hicks's COVID-induced symptoms are so serious that the Bureau of Prisons (BOP) has referred Hicks "to be seen by the neurology clinic," (Red Br. 5), something that has

---

[1] Unwittingly helping to prove the point, the government told the district court that inmates who *receive* the vaccine are precluded from compassionate release based on COVID-19-related concerns. *See* A-159 ("If the defendant was fully vaccinated against COVID-19, he would not present an 'extraordinary and compelling reason' for compassionate release."). If vaccinated and non-vaccinated inmates alike are precluded from compassionate release, then by definition, vaccination status cannot be the fulcrum point on which compassionate release tips.

accomplished nothing: his ailments persist. Somewhat relatedly, the government repeatedly states that Hicks "has no chronic medical conditions that would place him at a greater risk for complications should he contract COVID-19 again," (Red Br. 11; *see also* Red Br. at 4, 12), and also curiously, that Hicks's bout with COVID-19 was "asymptomatic." (*See* Red Br. 4, 12) (so stating).

Each of these arguments runs counter to the record and the district court's findings. After it "carefully reviewed" Hicks's medical records, the district court acknowledged that although Hicks's second infection of COVID-19 may have been "deemed asymptomatic *at the time*," Hicks has since "complained of post-infection radicular symptoms (numbness and tingling), neck pain and stiffness, trouble sleeping, shortness of breath, and loss of taste and smell." (A-50; emphasis added).

More to the point, Hicks's concern has always been that this cluster of symptoms indicates that something is seriously amiss with his nervous symptom; hence his worry that perhaps he suffers from Guillain-Barré Syndrome. Extraordinary and compelling reasons exist, Hicks has always argued, because he "*presently* suffers from serious illness caused by COVID-19, and medical care within the prison system has not cured

the problem." (Blue Br. 37) (emphasis added). The government's attempts to paint Hicks as healthy or as well-situated to withstand a *third* COVID-19 infection is unavailing on this record. (*See* Red Br. 12: "The district court's decision considered holistically Hicks's medical records and the ability of the Bureau of Prisons to treat him if he were reinfected."). The problem is, Hicks was already twice infected, and the Bureau of Prisons is unable to adequately treat him *now*.

For similar reasons, the government's suggestion that Hicks's concerns are not sufficiently sincere, (Red Br. 12), likewise fail. The uncontroverted record evidence, generated by the BOP, is that Hicks suffers from significant neurological conditions; that months ago, the BOP referred him for neurological treatment; and Hicks's ailments have not abated. Hicks seeks this Court's intercession because he is genuinely concerned about his existing medical condition. The government's suggestion that Hicks is not sufficiently sincere in worrying about his radiating pain and numbness is mislaid.[2]

---

[2] The government notes, without context, that Hicks twice refused to take prescribed medication. Were Hicks, who filed for compassionate release in the district court *pro se*, afforded an evidentiary hearing, he could have explained the circumstances surrounding those events. Without more, however, it would be improper to infer simply that Hicks's

### III. Courts should not rely on acquitted conduct as a basis for denying compassionate release.

The government has it right when it says at the outset of its brief that "Hicks is convicted of RICO conspiracy and conspiracy to possess with intent to distribute, and to distribute, marijuana." (Red Br. 2). Unfortunately, as the brief progresses, the government accuses Hicks of arranging and receiving cocaine shipments, (Red Br. 2, 6, 7, 14), and even personally controlling or leading the enterprise's "cocaine distribution activity," (Red Br. 6, 14). This has always been the government's *theory* of the case. The problem is that Hicks's jury rejected that theory and *acquitted* Hicks of cocaine and cocaine-base related activity. The district ignored the jury's findings, too, when it wrote that Hicks was "the Buffalo-based leader of cocaine drug-distribution activities….overseeing the receipt and delivery of cocaine transported from the enterprise's source in Texas." (A-51).

All of this was addressed at length in the district court following the jury's verdict; it was the centerpiece of Hicks's direct appeal to this

---

refusal to take medication evinces his blasé attitude toward his physical condition. Counsel is aware of the context, and she can assure this Court that were it given complete information, it would not reach that conclusion.

Court because notwithstanding the jury's acquittal, "the government presented substantially the same [cocaine] evidence that it had presented during the first trial," (Red Br. 2), at Hicks's second trial; and it was discussed at length in the opening brief in this matter, (Blue Br. 37-42).

The upshot is that now, the government is forced to argue that "[a]cquitted conduct may be considered by the sentencing court so long as it is based on reliable information and is proven by a preponderance of the evidence." (Red Br. 15; collecting cases). Respectfully, this misses the point: it is one thing for acquitted conduct to be used at sentencing, but it is another thing entirely for acquitted conduct to be used as a rationale for denying compassionate release. As Hicks argues in his brief, the use of acquitted conduct to deny compassionate release constitutes an abuse of discretion because it is plainly at odds with the Congressional intent that motivated the amendments to the First Step Act, (Blue Br. 45-46). The government offers no response to that argument.

## Conclusion

Defendant prays that this Court reverse the district court's order and remand this case for further proceedings.

8

Respectfully submitted,
AARON HICKS
By his attorney:

/s/ Jamesa J. Drake
Jamesa J. Drake
Drake Law LLC
P.O. Box 56
Auburn, ME 04212
(207) 330-5105

**Certificate of Compliance with Rule 32(A)**

RE:       ***United States v. Aaron Hicks***
           **No. 22-0132-cr**

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,582 words, excluding the part of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using MSWord, Century Schoolbook, 14 point.

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the words or line print-out.

Dated: December 13, 2022

                         /s/ Jamesa J. Drake
                         Jamesa J. Drake
                         Drake Law LLC
                         P.O. Box 56
                         Auburn, ME 04121
                         (207) 330-5105

## Certificate of Service

I, Jamesa J. Drake, hereby certify that I have served a copy of this Appellant's Brief upon the United States by virtue of filing this brief through the Circuit Court's ECF System, causing a copy to be distributed to all relevant parties.

Dated: December 13, 2022

/s/ Jamesa J. Drake
Jamesa J. Drake
Drake Law LLC
P.O. Box 56
Auburn, ME 04121
(207) 330-5105